UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-cv-22495-RNS

SAMUEL HERNANDEZ, RICHARD
MONTOURE, and MARCY BROOKS, on behalf
of themselves and all others similarly situated,

            Plaintiffs,

v.

EVENT ENTERTAINMENT GROUP, INC.,

            Defendant.
_____/

**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS THE AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant Event Entertainment Group, Inc. ("EEG") files this Motion to Compel Arbitration and to Dismiss the Amended Complaint pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2 and 4, and Federal Rule of Civil Procedure 12(b)(1).

**INTRODUCTION**

Plaintiffs purport to bring class action claims against EEG for conversion and unjust enrichment. When Plaintiffs purchased their respective tickets to the Ultra Musical Festival scheduled to take place in Miami, Florida on March 20-22, 2020, they agreed to arbitrate the claims they now present to this Court. Under these circumstances, federal and state courts routinely enforce arbitration agreements, and the Federal Arbitration Act ("FAA"), which applies here, mandates arbitration of Plaintiffs' claims. The FAA creates a strong presumption in favor of arbitration and arbitration agreements are liberally construed in favor of arbitration. *Cruz v. Cingular Wireless, LLC,* 648 F.3d 1205, 1210 (11th Cir. 2011).

"The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1292 (S.D. Fla. 2017); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005) (affirming district court's granting motion to compel arbitration and dismissal of case, where all of the claims were subject to arbitration). As such, when ruling on this Motion, this Court may consider documents outside the four corners of the complaint. *See Tracfone Wireless*, 229 F. Supp. 3d at 1292 ("[I]n ruling on a motion to compel arbitration, the Court may consider matters outside of the four corners of the complaint.").

## BACKGROUND

### A. 2020 Ultra Music Festival

EEG produces an annual 3-day music festival in Miami under the name "Ultra Music Festival" (the "Event"). Jesus Torres Declaration ("Torres Decl.") ¶ 3, attached hereto as Exhibit A. EEG undertook efforts to produce the that certain Event which was scheduled to take place in Miami, Florida on March 20, 21 and 22, 2020 (the "2020 Event"). *Id*. The Ticketing Terms and Conditions for the 2020 Event (the "TT&C") expressly define EEG as the "Event Organizer" for the 2020 Event. Torres Decl. *Id.* at ¶ 6; Ex. 1 to Torres Decl., § 1. The TT&C have not changed from the time the tickets to the 2020 Event first went on sale. Torres Decl. ¶¶ 11. Tickets for the 2020 Event were sold exclusively by EEG using a third-party ticketing intermediary and only using an online platform.[1] *Id*. at ¶ 5.

### B. Purchase of Tickets to the 2020 Event

The website page utilized by EEG's third-party ticketing intermediary during the checkout process to purchase 2020 Event tickets ("Purchase Page") required each prospective purchaser to

---

[1] EEG did not offer any tickets to the 2020 Event for sale via box office, or by third party resellers, etc.

consent to the TT&C by checking a box that stated, "I [the purchaser] agree to the Ticketing Terms and Conditions" ("TT&C Box"). *Id*. at ¶ 7. The TT&C Box was located on the Purchase Page below where the prospective purchaser had to enter their credit card information and above the button that allowed the prospective purchaser to complete the purchase for the 2020 Event. *Id*. EEG made the TT&C available for prospective purchasers in two ways. *Id*. at ¶ 8. First, prospective purchasers of tickets to the 2020 Event could review the entire TT&C in a screen located on the Purchase Page directly above the TT&C Box. *Id*. Additionally, the words "Ticketing Terms and Conditions" in the language of the TT&C Box were in a highlighted hyperlink that opened a new window that provided the entire TT&C on a larger screen. *Id*. If a prospective purchaser did not consent to the terms and conditions by checking the TT&C Box, the prospective purchaser could not proceed to purchase any ticket for the 2020 Event. Instead, an error message would pop up stating, "! Please check this box if you want to proceed." *Id*. at ¶ 9.

### C. Plaintiffs' Purchase of Tickets and Agreement to the TT&C

The named Plaintiffs purchased tickets to the 2020 Event and purport to bring this action on behalf of other similarly situated class members, all of whom purchased tickets to the 2020 Event. *See* Am. Compl. [ECF No. 13] ¶¶ 7, 16, 28, 64-65. For purposes of this Motion, there is no dispute that Plaintiffs and the putative class members actually purchased tickets to the 2020 Event on the Internet through the Purchase Page. *See id*. at ¶¶ 64-65. Accordingly, because each prospective purchaser had to consent to the TT&C terms by clicking the TT&C Box in order to proceed to purchase tickets to the 2020 Event, Plaintiffs and the purported class members agreed to the entirety of the TT&C. *See id.* at ¶ 57[2]; Torres Decl. ¶¶ 9-10.

---

[2] The Amended Complaint mistakenly attaches the Ticketing Terms & Conditions from the 2019 Event. EEG is providing the Court and Plaintiffs with the entire proper and applicable Ticketing Terms and Conditions for the 2020 Event as Exhibit 1 to the Torres Declaration.

3

The TT&C provide, in relevant part:

**IF YOU DO NOT AGREE WITH ANY OF THE TERMS AND CONDITIONS AS SET FORTH IN THIS AGREEMENT . . . DO NOT PURCHASE A TICKET**[.]

"Purchaser" shall mean the individual who will be purchasing a valid Ticket for the Event.

12. **Disputes.** Bearer and Purchaser acknowledge and agree that any disputes arising from or related to Purchaser's purchase of Tickets hereunder or any relationship or dispute between Bearer and [EEG], Purchaser and [EEG], Bearer and any company or person employed by or which is affiliated with [EEG], or Purchaser and any company or person employed by or which is affiliated with [EEG] (a "Dispute") shall only be resolved subject to FINAL AND BINDING ARBITRATION, and may only be resolved through an individual arbitration governed by the Federal Arbitration Act…. THE PARTIES TO THIS AGREEMENT GIVE UP THEIR RESPECTIVE RIGHTS TO GO TO COURT in connection with any Dispute and acknowledge and agree that such Dispute(s) will be determined by a NEUTRAL ARBITRATOR; NOT A JUDGE OR JURY. NO PARTY TO WHICH THIS AGREEMENT APPLIES SHALL BRING OR PARTICIPATE IN ANY CLASS ACTION OR OTHER CLASS PROCEEDING, INCLUDING CLASS ARBITRATION, IN CONNECTION WITH ANY DISPUTE. […]

14. **Assignment; Entire Agreement**. [. . .] Bearer and Purchaser acknowledge and agree that the terms and conditions set forth herein…represent the entire agreement between Bearer, Purchaser and [EEG] with respect to the subject matter of this Agreement.

15. **Severability**. If any term or provision of this Agreement is found by a court of competent jurisdiction to be invalid, illegal, or otherwise unenforceable, the unenforceable provision shall not affect the otherwise valid terms or provisions or the whole of this Agreement. The applicable terms or provisions shall be deemed modified to the extent necessary to render such provision enforceable, and the rights and obligations of the parties shall be construed and enforced accordingly, preserving to the fullest permissible extent, the intent and agreements of the parties set forth herein.

*See* Ex. 1 to Torres Decl. (capitalization and bold in original).

### D.  World-Wide Pandemic Forces 2020 Event to Be Rescheduled

On March 6, 2020, EEG was officially directed by the City of Miami to reschedule the 2020 Event due to the COVID-19 pandemic. Torres Decl. ¶ 12, and Composite Ex. 2 thereto. The

City's decision was based on the Florida Governor's declaration of a "Public Health Emergency" and the Centers for Disease Control and Prevention's Interim Guidance for COVID-19 because the 2020 Event fell within the category of large mass gatherings and is considered a high profile international event that attracts attendees from more than 100 countries. *See* Ex. 2 to Torres Decl. As a result, EEG notified purchasers of tickets to the 2020 Event, which includes Plaintiffs and the purported class members: (a) that the 2020 Event was being rescheduled; (b) that all tickets purchased for the 2020 Event would remain valid and would be honored at either the 2021 or 2022 Event, at the purchaser's option; and (c) of purchaser's option to claim various additional benefits, including discounts on merchandise and free or discounted entry to other *Ultra* branded events. Torres Decl. ¶ 13.

### E.  Plaintiffs' Claims All Fall Under the "Disputes" Provision of the TT&C

Plaintiffs allege that in light of the rescheduling of the 2020 Event, each named Plaintiff received a notification from EEG about such rescheduling. *See* Am. Compl. ¶¶ 8, 17, 29. After receiving EEG's notification, each named Plaintiff then attempted to contact EEG to obtain a refund due to the rescheduled 2020 Event. *Id*. at ¶¶ 9, 18, 30. As a result, Plaintiffs now assert claims against EEG for conversion and unjust enrichment due to their purchase of tickets to the 2020 Event. Am. Compl. ¶ 5 ("Accordingly, Plaintiffs bring this action for conversion and unjust enrichment in order to recover monies paid for tickets to the 2020 Ultra Music Festival."). As noted above, the TT&C provide that any disputes "arising from or related to" either (a) the purchase of tickets to the 2020 Event or (b) any relationship or dispute between the purchasers of tickets to the 2020 Event (e.g., Plaintiffs and the purported class members) and EEG are subject to the language in the "Disputes" provision of the TT&C. *See* Ex. 1 to Torres Decl., at § 12.

## **ARGUMENT**

Congress enacted the Federal Arbitration Act ("FAA") to "declare 'a national policy favoring arbitration of claims that parties contract to settle in that manner.'" *Vaden v. Discover Bank,* 556 U.S. 49, 58 (2009) (quoting *Preston v. Ferrer,* 552 U.S. 346, 7 (2008)). The FAA embodies "a liberal federal policy favoring arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The Supreme Court has interpreted the FAA to mean that courts must "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219 (1985). Specifically, Section 4 of the FAA provides that a party aggrieved by the failure of another to arbitrate may file a motion to compel arbitration with a district court. *See* 9 U.S.C. § 4; *Vaden,* 556 U.S. at 62.

Because the Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss and because all of the claims at issue are subject to arbitration, once this Court grants the motion to compel arbitration, this Court should also dismiss Plaintiffs' claims with prejudice. *See Tracfone Wireless*, 229 F. Supp. 3d at 1292; *Caley*, 428 F.3d 1359.

### I.     COMPELLING ARBITRATION

So long as a valid arbitration agreement exists, there is a strong presumption in favor of enforcing arbitration agreements. *Dean Witter*, 470 U.S. at 217. As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25. However, this strong presumption exists only once it is established that the parties did in fact enter into a "'validly formed and enforceable arbitration agreement.'" *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010)). Thus, the first factor that must be addressed is whether a valid agreement to arbitrate exists. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). The second factor to be considered by the Court in adjudicating a motion to

compel arbitration is whether the claims brought fall under the scope of the arbitration agreement. *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213-14 (11th Cir. 2011). Both of these factors support the entry of an order compelling arbitration here.

### A. Plaintiffs and EEG Reached a Valid Agreement to Arbitrate

The "Disputes" section of the TT&C contains the relevant arbitration provision. *See* Ex. 1 to Torres Decl., § 12. EEG offered tickets to the 2020 Event, subject to the TT&C. *See* Torres Decl. ¶¶ 5, 7, 9. In order for Plaintiffs to complete the purchase of a ticket to the 2020 Event, each Plaintiff had to first affirmatively consent to the TT&C by clicking the TT&C Box. *See id*. at ¶¶ 9-10; Am. Compl. ¶ 57 ("In order to purchase Tickets, EEG requires purchasers to agree to its Ticketing Terms and Conditions ('TT&C') [.]"). By clicking the TT&C Box, all purchasers of tickets to the 2020 Event—which includes Plaintiffs and their purported class members—assented to the TT&C and formed a "clickwrap contract." *See Salco Distributors, LLC v. iCode, Inc.*, No. 8:05-cv-00642, 2006 WL 449156 at *2 n. 5 (M.D. Fla. Feb. 22, 2006) ("A clickwrap contract refers to an agreement that requires a computer user to read the agreement and click 'I accept' before proceeding to the next screen or obtaining additional information."). Clickwrap contracts containing arbitration provisions, like the one used here, are valid and enforceable throughout federal courts, including those in Florida. *See Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) ("In Florida and the federal circuits ... clickwrap agreements are valid and enforceable contracts.") (citing *Salco*, 2006 WL 449156, at *3); *see also Bachewicz v. JetSmarter, Inc.*, No. 18-cv-62570, 2019 WL 1900332 (S.D. Fla. Apr. 29, 2019) (granting defendant's motion to compel arbitration based on clickwrap contract containing arbitration provision); *Laine v. JetSmarter, Inc.*, No. 18-cv-62969, 2019 WL 1900339 (S.D. Fla. Apr. 29, 2019) (same).

Accordingly, by entering into the clickwrap agreement, Plaintiffs entered into a valid agreement to arbitrate with EEG. *See Segal*, 763 F. Supp. 2d at 1369. Having established the existence of a valid agreement to arbitrate, this Court must next determine whether Plaintiffs' claims fall under the scope of the agreement to arbitrate.

### B. Plaintiffs' Claims Fall Under the Scope of the Agreement to Arbitrate

"The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem Hosp.*, 460 U.S. at 24-25. Notwithstanding that it is Plaintiffs' burden to disprove arbitrability, it is clear that Plaintiffs' claims fall under the scope of the arbitration provision in the TT&C.

"[I]t is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). The "Disputes" provision of the TT&C expressly states:

> Purchaser acknowledge[s] and agree[s] that **any** disputes arising from, or relating to Purchaser's purchase of Tickets [to the 2020 Event] or any relationship or dispute between . . . Purchaser and [EEG], . . . shall only be resolved subject to FINAL AND BINDING ARBITRATION . . . NO PARTY TO WHICH THIS AGREEMENT APPLIES SHALL BRING OR PARTICIPATE IN ANY CLASS ACTION OR OTHER PROCEEDING, INCLUDING CLASS ARBITRATION, IN CONNECTION WITH ANY DISPUTE.

Ex. 1 to Torres Decl., at § 12 (capitalization in original) (additional emphasis added). Plaintiffs' claims raise a dispute with EEG as a direct result of their purchase of tickets to the 2020 Event, which squarely puts this action within the purview of the broad arbitration provision of the TT&C. *See* Am. Compl. ¶ 5.

When the plain language of the arbitration provision is unambiguously broad, as it is here, the court must compel arbitration of a plaintiff's claims. *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1327 (S.D. Fla. 2016) ("There is no question that Plaintiff's claims are covered by the [. . .] arbitration clause, and therefore, the Court finds that it must compel arbitration on all of Plaintiff's claims."); *see also Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1326 (S.D. Fla. 2009) (granting motion to compel arbitration based upon broad language in arbitration provision). Similar to the language here, the arbitration provision in *Herrera Cedeno* provided that the parties had to arbitrate all claims or controversies "concerning or arising from" the plaintiff's relationship with the defendant. 154 F. Supp. 3d at 1327. Furthermore, the broad language of the "Disputes" provision of the TT&C covers the entirety of Plaintiffs' claims. *See Tracfone Wireless*, 229 F. Supp. 3d 1284 at 1294 (compelling arbitration of unjust enrichment claim due to broad language in arbitration provision); *Day v. Persels & Assocs.*, No. 8:10-cv-02463, 2015 WL 413224, at *8-9 (M.D. Fla. Jan. 30, 2015) (holding that language requiring arbitration of claims arising from or relating to "our relationship or your services" was "unambiguously broad" and applied to Florida and federal statutory claims, as well as common law claims).

Additionally, "when a Court is faced with 'deciding whether a claim falls within the scope of an arbitration agreement, courts focus on factual allegations in the complaint rather than the legal causes of action asserted.'" *Garcia v. Kendall Lakes Auto., LLC*, No. 18-cv-24397, 2019 WL 1359475, at *3 (S.D. Fla. Mar. 26, 2019) (citation omitted) (granting motion to compel arbitration and dismissing action). Plaintiffs' allegations establish that their dispute arises from and is related to their purchase of tickets to the 2020 Event and Plaintiffs' relationship with EEG, as the Event Organizer. *See* Am. Compl. ¶ 5 (alleging that Plaintiffs' claims seek to recover amounts paid for

tickets to the 2020 Ultra Music Festival.); *id.* at ¶¶ 8-9, 17-18, 29-30 (alleging each Plaintiff received an email from EEG informing them of the rescheduling of the 2020 Event, and that each Plaintiff attempted to contact EEG to obtain a refund of their purchased tickets).

Moreover, "in order for the dispute to be characterized as arising out of or related to the subject matter of the contract ... it must, at the very least, raise some issue the resolution of which requires a reference to or construction of some portion of the contract itself." *Betancourt v. Green Tree Servicing, LLC*, No. 8:13-cv-02759, 2013 WL 6644560, at *2 (M.D. Fla. Dec. 17, 2013). Plaintiffs' allegations establish the need for this Court to refer to the TT&C clickwrap agreement. *See* Am. Compl. ¶ 57 ("The TT&C include several provisions relevant to this action.").[3] One of the relevant provisions is the "Refund Policy" provision, which directly impacts Plaintiffs' claims given that they seek refunds due to the rescheduling of the 2020 Event because of the global COVID-19 pandemic. *See* Am. Compl. ¶ 62 (specifically referencing TT&C's Refund Policy provision). Another provision relevant to Plaintiffs' claims is the "Disputes" provision that establishes the requirement that Plaintiffs arbitrate their claims. Accordingly, Plaintiffs' dispute raises issues which, in order to resolve them, "require[] a reference to or construction of" provisions of the TT&C. *See Betancourt*, 2013 WL 6644560, at *2.

Thus, the broad language utilized in the TT&C and Plaintiffs' own allegations establish that Plaintiffs' claims are subject to the arbitration provision in the TT&C.

### C. Enforceability of the TT&C as a Whole, Which Plaintiffs Dispute, Is for the Arbitrator to Decide

Based on the allegations in their Amended Complaint, it appears Plaintiffs will attempt to avoid their obligation to arbitrate their claims by asserting that the TT&C, in its entirety, is illusory,

---

[3] As noted above, Plaintiffs mistakenly attached the Ticketing Terms & Conditions for the 2019 Event to their Amended Complaint, and EEG has provided the relevant TT&C herewith. *See* n.2 *supra*.

void, and unenforceable based upon language not contained in the "Disputes" provision of the TT&C. Am. Compl. ¶¶ 62–63. This Court should reject any such argument because any issue raised as to the validity of the entire contract—here, the TT&C—is to be determined by the arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator."); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (where the party disputing arbitration challenges the validity of the entire Agreement containing the arbitration provision, that determination falls to the arbitrator); *Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015) ("Challenges to the validity of the contract as a whole are for the arbitrator to decide."); *Stephens v. Checkr, Inc.*, No. 8:19-cv-02252, 2019 WL 8138178, at *5 (M.D. Fla. Nov. 25, 2019) ("Because Plaintiff's claim that the arbitration provision is illusory is based on a separate provision of the contract, and not a provision that relates specifically or exclusively to the agreement to arbitrate, this is a challenge to the contract as a whole that must be resolved by the arbitrator in accordance with the Supreme Court's ruling in *Buckeye*.").

The Eleventh Circuit has made it clear that as long as "the provisions of the arbitration clause are enforceable, then the court must compel arbitration according to the terms of the agreement." *Terminix*, 432 F.3d at 1331 (reversing district court's denial of motion to compel arbitration). Because the terms of the arbitration clause in the TT&C are enforceable, Plaintiffs should be compelled to arbitrate the entirety of their claims.

**II.  THE COURT SHOULD COMPEL ARBITRATION AND DISMISS THIS ACTION.**

"The Eleventh Circuit has held that 'the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration' when all of the claims are subject to mandatory arbitration." *Garcia*, 2019 WL 1359475, at *6 (quoting *Lambert v. Austin Indus.*, 544 F.3d 1192,

11

1195 (11th Cir. 2008)). Under Eleventh Circuit precedent, when all of the claims are subject to an arbitration agreement, an order compelling arbitration and dismissing the case with prejudice is proper. *See Caley*, 428 F.3d 1359 (affirming district court's granting motion to compel arbitration and dismissal of case).

As shown above, the arbitration provision is a valid agreement to arbitrate that covers all of Plaintiffs' claims. Therefore, this Court should dismiss the entire action with prejudice. *See id*; *Phillips v. NCL Corp. Ltd.*, No. 18-cv-23912, 2019 WL 2288987, at *2 (S.D. Fla. May 29, 2019) (Scola, J.) (granting motion to compel arbitration and dismissing claims with prejudice where all claims subject to arbitration); *Perera v. H & R Block E. Enterprises, Inc.*, 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012) (compelling arbitration of plaintiff's claims and dismissing all claims with prejudice; "This Court agrees with the line of opinions that have compelled arbitration and dismissed the case where all claims were subject to arbitration."); *Olsher Metals Corp. v. Olsher*, No. 01-cv-03212, 2003 WL 25600635, at *9 (S.D. Fla. Mar. 26, 2003) (court compelled arbitration and dismissed case with prejudice; "A case in which arbitration has been compelled may be dismissed 'in the proper circumstances,' such as 'when *all* the issues raised in … court must be submitted to arbitration.'") (emphasis in original) (citation omitted) ), *aff'd*, 90 F. App'x 383 (11th Cir. 2003).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court enter an order: (1) compelling Plaintiffs to submit their claims to arbitration in compliance with the TT&C; and (2) dismissing their action with prejudice.

Dated: July 27, 2020.                             Respectfully submitted,

                                /s/ *Hildy M. Sastre* (Florida Bar No. 0026492)
                                E-Mail:  hsastre@shb.com
                                Daniel B. Rogers (Florida Bar No. 195634)
                                E-Mail: drogers@shb.com
                                Antar K. Vaughan (Florida Bar No. 497754)
                                E-Mail: avaughan@shb.com
                                Katherine G. Mastrucci (Florida Bar No. 0105367)
                                E-Mail: kmastrucci@shb.com
                                Michael L. Mallow (*pro hac vice* forthcoming)
                                E-Mail: mmallow@shb.com
                                SHOOK, HARDY & BACON L.L.P.
                                Citigroup Center, Suite 3200
                                201 South Biscayne Blvd.
                                Miami, Florida 33131
                                T: (305) 358-5171

                                *Attorneys for Defendant Event Entertainment Group, Inc.*

4841-3937-2738