United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Marcy Brooks, Richard Montoure, and Samuel Hernandez, on behalf of themselves and all others similarly situated, Plaintiffs,<br><br>v.<br><br>Event Entertainment Group, Inc., Defendant. | Civil Action No. 20-22495-Civ-Scola<br>Consol. Case 20-22185-Civ-Scola |

**Order Regarding Motion to Compel to Arbitration**

    Plaintiffs Marcy Brooks, Richard Montoure, and Samuel Hernandez, ticket holders for the March 2020 Ultra Music Festival, in this putative class-action case, seek to recover damages from Defendant Event Entertainment Group, Inc., for canceling or postponing the Miami festival just a few days before its scheduled start. (Pls.' Resp. to Mot. to Compel, ECF No. 17.) In response, Event Entertainment seeks to compel arbitration based on an arbitration clause in the parties' ticket contracts. (Def.'s Mot. to Compel, ECF No. 14.) Further, Event Entertainment submits, in conjunction with compelling this case to arbitration, the Court should dismiss the Plaintiffs' claims with prejudice. (*Id.* at 12.) In opposition to that motion, the Plaintiffs argue the Court should not enforce the arbitration clause because it is unconscionable and unenforceable. (Pls.' Resp., ECF No. 17.) The Plaintiffs also contend a stay of this case pending arbitration, rather than dismissal, is the appropriate course. (*Id.* at 15.) Event Entertainment has timely replied to the Plaintiffs' response. (Def.'s Reply, ECF No. 24.) After careful review, the Court agrees with Event Entertainment that the parties should be compelled to arbitrate their dispute. The Court disagrees, however, that the Plaintiffs' case should be dismissed with prejudice. Accordingly, the Court **grants in part and denies in part** Event Entertainment's motion to compel and to dismiss this case (**ECF No. 14**).

    **1. Background**

    Event Entertainment produces an annual three-day music festival under the name "Ultra Music Festival." Most recently, the festival had been scheduled to take place in Miami, Florida, on March 20, 21, and 22, 2020. Due to the COVID-19 pandemic, however, the concert was canceled. As a result, the Plaintiffs all requested refunds. Event Entertainment denied their requests,

however, and instead notified the Plaintiffs that their tickets would be honored at either the 2021 or 2022 Ultra events, at their option. Event Entertainment afforded the Plaintiffs one month to affirmatively agree to defer their tickets before the value of their tickets would be forfeited. Unhappy with Event Entertainment's refusal to provide them refunds, the Plaintiffs filed this putative class action for conversion and unjust enrichment.

When the Plaintiffs purchased their tickets, they were required to consent to Event Entertainment's ticketing terms and conditions by checking a box that indicates the purchaser "agree[s] to the Ticketing Terms and Conditions." (Def.'s Mot. at 3.) One of the terms of that agreement is an arbitration clause regarding "any disputes arising from or related to Purchaser's purchase of Tickets hereunder or any relationship or dispute between . . . Purchaser and [Event Entertainment]." (*Id.* at 4.)

### 2. Legal Standard

Arbitration is a matter of contract, thus the "interpretation of an arbitration agreement is generally a matter of state law." *Stolt-Noelsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010). But the Federal Arbitration Act (FAA) "requires courts to enforce [arbitration agreements] according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010). Section 2 of the FAA provides that written provisions that evidence an intent to settle a controversy by arbitration are "valid, irrevocable, and enforceable" except where grounds "exist at law or in equity" to revoke the contract. 9 U.S.C. § 2. Section 3 of the FAA requires that a court—upon motion by a party to an action in federal court—stay the action if it involves an "issue referable to arbitration under an agreement in writing." 9 U.S.C. § 3. And if the Court finds that the parties are subject to a valid arbitration agreement, the Court "shall make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4.

These provisions manifest a "liberal federal policy favoring arbitration agreements." *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir 2005) (cleaned up). The party opposing the motion to compel arbitration "has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *VVG Real Estate Investments v. Underwriters at Lloyd's, London*, 317 F. Supp. 3d 1199, 1204 (S.D. Fla. 2018) (Bloom, J.) Long standing precedent favors resolving "any doubts concerning the scope of arbitrable issues" in favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983). As such, courts "rigorously enforce" arbitration agreements." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004).

### 3. Analysis

The Plaintiffs seek to avoid arbitration, arguing that the arbitration clause within their ticketing agreements is unconscionable. In support of their position, the Plaintiffs (1) insist the 2019 ticket agreement and not the 2020 ticketing agreement, attached to Event Entertainment's motion, applies; (2) argue the ticketing agreement is a contract of adhesion; (3) maintain the arbitration provision was hidden within a maze of fine print; (4) contend the ticketing agreement lacked mutuality of obligation; and (5) assert the costs of the required arbitration would be prohibitively expensive for the Plaintiffs. "Florida unconscionability law require[s] a showing of both procedural and substantive unconscionability for a contractual provision to be held unconscionable." *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1229 (11th Cir. 2012). The Court finds the Plaintiffs' resistance to arbitration unavailing: they have failed to establish either procedural or substantive unconscionability, as more fully explained below.

First, the Plaintiffs have failed to come forward with evidence, as they must, that would support their claim that Event Entertainment's 2019 ticketing agreement applies to the 2020 Ultra Music Festival. *See Gomez v. Allied Professionals Ins. Co.*, 457 F. Supp. 3d 1351, 1357 (S.D. Fla. 2020) (Bloom, J.) ("A plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement."). Instead, the Plaintiffs merely identify, in a footnote, a discrepancy between the ticketing agreement they attached to their complaint—the 2019 agreement—and the ticketing agreement Event Entertainment attaches to its motion—the 2020 agreement. (Pls.' Resp. at 6 n.1.) The Plaintiffs then elaborate that they "secured" the copy of the agreement upon "which they rely from the Internet Archive's Wayback Machine" and that this "is the only version collected and stored between March 2019 and April 2020." (*Id.*) The Plaintiffs then point out that the version attached to Event Entertainment's motion "is time-stamped March 4, 2020," which, they emphasize, is "*after* Plaintiffs purchased their tickets." (*Id.* (emphasis in original).)

Importantly, the Plaintiffs do not allege they ever actually agreed to the terms of the 2019 agreement, rather than the 2020 agreement. Nor do they allege, or even speculate, that the 2019 agreement was the version presented to them when they purchased their ticket. And, to be sure, it would not even make sense for the 2019 agreement to apply to the tickets the Plaintiffs purchased for the 2020 event. Indeed, a cursory review of the 2019 agreement shows that printed on the upper-left corner of each of its pages is "ULTRA musicfestival ® March 29, 30, 31 – **2019**." (Am. Compl. 13-1, 2–6 (emphasis

added here).) Further, the second to last page of the 2019 agreement supplied by the Plaintiffs references "Historic Virginia Key Beach Park & Miami Marine Stadium" as the location of the festival. (*Id.* at 5.) And the Plaintiffs do not otherwise dispute that the 2020 event was to take place at Bayfront Park, in downtown Miami, not on Virginia Key, where the 2019 festival was held. Lastly, Event Entertainment has supplied a declaration, from Event Entertainment's manager of technology, Jose Torres—that the Plaintiffs have not rebutted—which unequivocally establishes that the 2020 ticketing contract provided by Event Entertainment applies to the March 2020 event. (Torres. Aff., ECF No. 24-2, 3–4.) In sum, in light of Event Entertainment's coming forward with the applicable arbitration agreement and establishing the necessary contractual relationship between the parties, on the one hand, and the Plaintiffs' failure to carry their burden to rebut that showing, on the other, the Court finds the ticketing agreement attached to Event Entertainment's motion to be the controlling contract.

Second, the Plaintiffs' argument that they should not be compelled to arbitrate because the ticketing agreement is a contract of adhesion fails in that it attacks the entire agreement rather than just the arbitration clause itself. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) (noting that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance"); *Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 877 (11th Cir. 2005) ("If the party's claims of adhesion, unconscionability, and lack of mutuality of obligation pertain to the contract as a whole, and not to the arbitration provision alone, then these issues should be resolved in arbitration.") (cleaned up). Accordingly, the Plaintiffs' contract-of-adhesion argument presents no impediment to compelling arbitration and allowing the arbitrator to decide that issue or any other issue that goes to the validity or enforceability of the ticketing agreement as a whole.

Third, the Plaintiffs' remaining argument in support of their procedural-unconscionability argument—that the ticketing agreement's arbitration clause is unclear and inconspicuous—fails as well because it is based solely on the formatting of the **2019** ticketing agreement. As previously explained, the Plaintiffs fail to establish that this version of the agreement, as opposed to the 2020 version, supplied by Event Entertainment, applies to their ticket purchases. And the 2020 version of the agreement has none of the formatting issues about which the Plaintiffs complain. Instead the 2020 version (1) was available for review in multiple ways for the convenience of all ticket purchasers, including the Plaintiffs; (2) was not presented as a single block of text; (3) was well organized with clearly labeled numbered provisions and

bolded and underlined titles for each separate provision; (4) offset the arbitration provision from the remainder of the agreement by adding spacing and identifying the relevant sections with the title, "Disputes"; (5) capitalized important language within the arbitration provision; and (6) was written using easily understood language. (*See* Ticketing Agmt., ECF No. 14-1, 10–14.) The Plaintiffs fail to identify any particular language that they summarily complain is not "easily understood" and fail to point to any actual "deceptive sales practices" that they allege "magnified" the arbitration clause's procedural shortcomings. (Pls.' Resp. at 12.) Even more importantly, perhaps, not a single Plaintiff even alleges not actually seeing or understanding the arbitration clause. In sum, because the Plaintiffs' gripes focus on the wrong version of the ticketing agreement and are wholly unsupported by any specifics, their procedural-unconscionability arguments miss the mark.

Finally, even if the Court found the arbitration clause procedurally unconscionable, the Plaintiffs additionally fail to show that it was substantively unconscionable. "Substantive unconscionability . . . requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience." *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009) (King, J.). Here, the Plaintiffs contend the arbitration provision is substantively unconscionable because (1) there is a lack of mutuality of obligation; and (2) it imposes "substantial costs" on them. (Pls.' Resp. at 13–15.) Neither argument withstands scrutiny.

To begin with, the Plaintiffs' lack-of-mutuality argument, like their adhesion argument, is misplaced. The Plaintiffs complain that the ticketing agreement allows Event Entertainment to unilaterally modify any of the contract's terms. In presenting their argument, however, the Plaintiffs attack language in section 1 of the agreement, which, by its terms, is applicable to the contract in its entirety—not just the arbitration clause. (Ticket Agmt., ECF No. 14-1, 10.) As previously explained above, though, a claim that attacks the agreement as a whole, and not just the arbitration provision, should be resolved through arbitration. *Jenkins*, 400 F.3d at 877 (holding that a claim of "lack of mutuality of obligation [that] pertain[s] to the contract as a whole, and not to the arbitration provision alone . . . should be resolved in arbitration"); *Burks v. Autonomy, Inc.*, 11-62677-CIV, 2012 WL 13005954, at *4 (S.D. Fla. May 15, 2012) (Dimitrouleas, J.) (compelling arbitration because the plaintiff's lack-of-mutuality argument regarding the defendant's contractual right to change the contract terms was an issue to be decided by the arbitrator).

And, lastly, the Plaintiffs' protests about the costs of arbitration also fail. The Plaintiffs complain that—between the expense of simply initiating arbitration proceedings and the travel expenses for Plaintiffs who do not live in

Miami—it is cost prohibitive for them to arbitrate their claims. But a party seeking to invalidate an arbitration clause on such grounds must "offer evidence" of both (1) "the amount of fees he is likely to incur" and (2) "his inability to pay those fees." *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1260 (11th Cir. 2003). In an attempt to meet their burden, the Plaintiffs provide only that "[t]o simply *initiate* proceedings through the [American Arbitration Association] under its commercial arbitration rules . . . costs $750 to $3,5000" and that non-Miami resident Plaintiffs will have to pay for travel and lodging to attend arbitration. (Pls.' Resp. at 14 (emphasis in original).) These contentions fall short.

       The Plaintiffs' estimate of the cost to initiate proceedings is purely speculative. The authority to which they cite to support their claim is a single AAA webpage that lists the costs for "a la carte services." But they fail to provide any evidence why these particular fees would be applicable to their claims. And, indeed, Event Entertainment points out that the ticketing agreement arbitration clause provides for the application of the "Consumer Arbitration Rules." (Def.'s Reply at 11.) Under those rules, the Plaintiffs' filing fees would be capped at $200 and Event Entertainment must pay virtually all other remaining fees and expenses. (*Id.*) Further, the Consumer Arbitration Rules provide that where, as here, no individual claim exceeds $25,000, the dispute "shall be resolved by the submission of documents only/desk arbitration," which would eliminate the Plaintiffs' concerns about travel costs. (*Id.*) And, lastly, under the Consumer Arbitration Rules, the arbitrator can reduce a plaintiff's fees in the event of financial hardship. (*Id.*) Regardless, though, of which rules apply, the Plaintiffs have simply failed to carry their own burden of proving that the expense of arbitration would be cost prohibitive which is, ultimately, fatal to their argument. *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1291 (11th Cir. 2015) ("The party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs.") (cleaned up).

### 4. Conclusion

       In sum, in the face of Event Entertainment's showing that the parties agreed to arbitrate their disputes as provided for in the 2020 ticketing agreement, the Plaintiffs fail to come forward with any evidence or viable argument that that arbitration should not be compelled. On the other hand, the Court disagrees with Event Entertainment that, in compelling arbitration, the Court should dismiss the Plaintiffs' case with prejudice. The Plaintiffs have pointedly requested a stay rather than dismissal, should the Court compel

arbitration. And under section 3 of the FAA, "the court . . . shall *on application of one of the parties* stay the trial." 9 U.S.C.A. § 3. The Court thus finds a stay here mandatory. Further, even if the Court had discretion in choosing between dismissal or a stay, it would opt for a stay in this case. In the event the arbitrator in this case were to determine that the arbitration agreement here is invalid or inapplicable to the parties' disputes, this case would not be over and therefore dismissal, never mind dismissal with prejudice, would be premature. Accordingly, the Court **grants in part and denies in part** Event Entertainment's motion to compel and to dismiss with prejudice (**ECF No. 14**).

As such, the Court orders the parties to **submit their disputes to arbitration**. This case is **stayed** pending arbitration and the Court orders the Plaintiffs to advise the Court once the arbitration is terminated or the claims at issue are otherwise resolved. In the meantime, the Clerk is directed to **administratively close** this case.

**Done and ordered**, in Miami, Florida, on November 23, 2020.

Robert N. Scola, Jr.
United States District Judge